## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SUZANNE WUNSTELL, ET AL.**                    CIVIL ACTION

**VERSUS**                                                      No. 22-975

**CLEAR BLUE SPECIALTY**                          SECTION I
**INSURANCE COMPANY**

### ORDER & REASONS

Before the Court is a motion[1] *in limine* filed by defendant Clear Blue Specialty Insurance Company ("defendant"). Defendant's motion seeks to exclude the reports and testimony of plaintiffs Suzanne and Blyght Wunstell's ("plaintiffs") experts, Susan Lewis ("Lewis") and Henry LaBrie ("LaBrie").[2] For the following reasons, the Court grants the motion *in limine* in part and denies it in part.

## I. BACKGROUND

### A. Factual History

Defendant issued policy number OUA10074103-01 to the plaintiffs for the period of May 13, 2021 to May 13, 2022.[3] Plaintiffs allege that the covered property sustained significant damage caused by Hurricane Ida and Tropical Storm Nicholas, which made landfall on August 29, 2021, and September 14, 2021, respectively.[4]

---

[1] R. Doc. No. 38.

[2] Defendant also filed a motion for partial summary judgment, arguing that if the Court grants defendant's motion *in limine*, plaintiffs will lack evidence to prove the cause of the damages plaintiffs allege, or that any additional damages are owed. *See* R. Doc. Nos. 39 (original motion for summary judgment), 46 (substituted motion for summary judgment).

[3] R. Doc. No. 39-3, at 1.

[4] R. Doc. No. 45, at 1.

Plaintiffs initially reported damages due to Hurricane Ida, and defendant's adjuster performed an inspection on September 4, 2021, issuing an estimate of $103,743.23 in damages, net of deductible.[5] Defendant issued payments of $3,000 and $30,000 on September 21 and 22, 2021, respectively.[6] Defendant sent an additional adjuster on September 28, 2021[7] and between November 6, 2021 and February 15, 2022, defendants issued four payments to plaintiffs, totaling $131,828.40.[8]

Unsatisfied with the amount paid by the defendant, plaintiffs retained Lewis, a licensed adjuster,[9] to provide estimates of damage to their property for each storm.[10] Lewis performed a single inspection of the property on February 10, 2022. LaBrie, a contractor and plaintiffs' "consultant,"[11] was present during the inspection and assisted Lewis by taking moisture readings in the property.[12] After the inspection, Lewis issued two estimates: One for Hurricane Ida, containing an estimate of $298,119.40 in damages, and one for Tropical Storm Nicholas, containing an estimate of $163,751.80 in damages.[13] Lewis' two reports are plaintiffs' only expert reports; LaBrie did not author a report.[14]

---

[5] *Id.* at 2.
[6] R. Doc. No. 53, at 7.
[7] *Id.*; R. Doc. No. 39-4, at 48.
[8] R. Doc. No. 53, at 7.
[9] R. Doc. No. 44-3, at 1.
[10] *Id.*
[11] R. Doc. No. 44, at 6.
[12] *Id.* at 5.
[13] R. Doc. No. 45-6, at 1.
[14] R. Doc. No. 38-1, at 2.

Following receipt of these two estimates, on March 25, 2022, defendant sent Gregory Landes to perform a reinspection of the property and he provided an estimate of damages for the complete scope of work in the amount of $295,560.20.[15] On March 4 and 11, 2022, defendant issued payment of $73,890.72 and $10,858.24, respectively.[16] Defendant then issued an additional payment of $60,639.06 on May 11, 2022.[17] Plaintiffs provided defendant with a contents list on July 28, 2022, in the amount of $76,144,[18] and defendants issued the most recent payment to plaintiffs in the amount of $45,271.02 on August 18, 2022.[19] In total, the defendant has paid plaintiffs $355,487.44.[20] All payments have been made pursuant to plaintiffs' Hurricane Ida claim.[21]

---

[15] R. Doc. No. 55-6, at 2. Landes' estimate notes that "[b]ased on the information from the homeowner's estimator Susan Lewis, who inspected the property [on] February 10, 2022, the insurance carriers' adjuster John Alligood['s] . . . photo sheets and our inspection on March 25, 2022, it is very difficult to delineate where Hurricane Ida damages ended and Tropical Storm Nicholas damages began. There are no definitive photographs showing the actual damages that occurred as a result of each loss. Documentation for the conditions of the property after each loss is lacking, affecting the ability to correctly assess the damages for each loss event. There appears to be overlapping damages to the dwelling resulting from the two losses, but again without more definitive documentation, it cannot be broken down properly." R. Doc. No. 39-5, at 5.

[16] R. Doc. No. 53, at 7

[17] *Id.*

[18] R. Doc. No. 55, at 3.

[19] R. Doc. No. 53, at 7; R. Doc. No. 55-7, at 1.

[20] R. Doc. No. 39, at 4 ("To date the Defendant has issued payments totaling $272,053.13 for Coverage A Dwelling, $220.43 for Coverage B Other Structures, $47,213.88 for Coverage C Personal Property, and limits up to $36,000 for Coverage D Loss of Use."); R. Doc. No. 53, at 7.

[21] R. Doc. No. 46-3, at 2.

3

## B. Procedural History

On June 14, 2022, this Court issued a scheduling order which states, in relevant part:

> Written reports of experts, as defined by Federal Rule of Civil Procedure 26(a)(2)(B), who may be witnesses for *Plaintiffs* fully setting forth all matters about which they will testify and the basis therefor shall be obtained and delivered to counsel for Defendant as soon as possible, but in no event later than *Wednesday, July 6, 2022*. The same deadline applies for any expert disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).[22]

The next paragraph, pertaining to the defendant's expert reports and disclosures, is identical except that it references "Defendants" and sets the deadline date for a month later.[23]

Both the defendant and the plaintiffs filed their expert reports and disclosures on August 5, 2022.[24] Plaintiffs filed a second witness and exhibit list on August 25, 2022.[25]

## C. Defendant's Motion *in Limine*

In its motion, the defendant submits that the reports and testimony of plaintiffs' experts, LaBrie and Lewis, should be excluded on the grounds that: (1) plaintiffs' expert disclosures were untimely;[26] (2) Lewis' written expert reports satisfy neither the requirements of Rule 26 of the Federal Rules of Civil Procedure nor the

---

[22] R. Doc. No. 8, at 2 (emphasis added).
[23] *Id.* (emphasis added).
[24] R. Doc. Nos. 23 (defendant's witness and exhibit list), 24 (plaintiffs' witness and exhibit list).
[25] R. Doc. No. 29.
[26] R. Doc. No. 38, at 3.

requirements of this Court's scheduling order;[27] (3) Lewis' testimony and reports are "not [] helpful to the jury to determine whether the hurricane caused damage to the property or to quantify any such damage[;]"[28] (4) plaintiffs cannot demonstrate that Lewis' valuations are reliable;[29] and (5) LaBrie did not issue an expert report, as required by Rule 26 and this Court's scheduling order, and therefore cannot testify as an expert at trial.[30] For the reasons discussed below, this Court grants the motion in part and denies it in part.

## II.  STANDARD OF LAW

Federal Rule of Civil Procedure 26(a)(2)(B) establishes the requirements for written disclosures of witnesses who are "retained or specially employed to provide expert testimony in the case." "Unless otherwise stipulated or ordered by the court," a party's expert disclosure must be accompanied by a written report which contains:

> (i) a complete statement of all opinions the witness will express and the basis and reason for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).[31]

---

[27] *Id.* at 4–5.

[28] *Id.* at 5–8.

[29] *Id.* at 8–9.

[30] *Id.* at 8.

[31] The issues raised in the motion currently before the Court pertain solely to Rule 26(a)(2)(B)(i) through (iii).

The requirement that expert witnesses include a statement of all opinions they will testify to in their written report is echoed in this Court's scheduling order: "Written reports of experts, as defined by Federal Rule of Civil Procedure 26(a)(2)(B), . . . fully setting forth all matters about which they will testify and the basis therefor shall be obtained and delivered to counsel for Defendant as soon as possible . . . ."[32] Per the Advisory Committee on Civil Rules' note to Rule 26, "[e]xpert reports under Rule 26 must be 'detailed and complete,' not 'sketchy and vague.'" *Harmon v. Georgia Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 36 (5th Cir. 2012) (quoting Advisory Committee Notes).

"District courts have the discretion to exclude expert . . . testimony when a party does not comply with [Rule 26(a)(2)'s disclosure requirements] in preparing an expert report . . . ." *S. Snow Mfg. v. Snowizard Holdings, Inc.*, No. 06-9170, 2013 WL 161189, at *2 (E.D. La. Jan. 15, 2013) (Brown, C.J.) (citing *Harmon*, 476 F. App'x at 36). Accordingly, as this Court has previously held, "[o]pinions not included in a required report may not be offered." *Beech v. Ariatic Marine, L.L.C.*, 511 F. Supp. 3d 750, 759 (E.D. La. 2021) (Africk, J.).

### III. LAW AND ANALYSIS

### A. Exclusion of Plaintiffs' Expert Reports and Disclosures for Untimeliness Is Not Appropriate

As previously noted, the Court's scheduling order states that plaintiffs' expert reports and disclosures were due "in no event later than Wednesday, July 6, 2022[,]"[33]

---

[32] R. Doc. No. 8.
[33] R. Doc. No. 8, at 2.

6

and the defendant's were due on Friday, August 5, 2022.[34] However, instead of filing their expert reports and disclosures on July 6, 2022, plaintiffs filed on August 5, 2022—a full month late. It appears that counsel for the plaintiffs mistook the deadline for the defendant's expert reports and disclosures as the deadline for their own.[35]

Federal Rule of Civil Procedure 16(b) "authorizes the district court to control and expedite pretrial discovery through a Scheduling Order." *Pride Centric Res., Inc. v. LaPorte*, No. 19-10163, 2021 WL 4476796, at *2 (E.D. La. Sept. 30, 2021) (Vitter, J.). Rule 16 further provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Pursuant to Rule 16, the Court has "broad discretion" to enforce its scheduling order. *See Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) ("[O]ur court gives the trial court 'broad discretion to preserve the integrity and purpose of the pretrial order.'") (quoting *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979)). This discretion extends to excluding untimely expert reports. *Briley v. Aquarius Boat Corp.*, No. 05-5711, 2007 WL 4532240, at *1 (E.D. La. Feb. 22, 2007) (Africk, J.) (excluding a plaintiff's expert report that was provided to the defendant over two months after the deadline stated in the Court's scheduling order.).

When deciding whether to exercise the Court's discretion to exclude evidence,

---

[34] *Id.*

[35] In their opposition to defendant's motion *in limine*, plaintiffs assert that "[w]itness and [e]xhibit lists were due on August 5, 2022. Plaintiffs filed their witness and exhibit list on August 5, 2022, (doc. 24) the same day as Defendants [*sic*] filed theirs." R. Doc. No. 44, at 4.

the Court weighs the following factors: (1) the party's explanation for its failure to timely identify its witnesses; (2) the importance of the proposed testimony; (3) any potential prejudice in allowing the admission of the testimony; and (4) the availability of a continuance to cure such prejudice. *Geiserman*, 893 F.2d at 790; *accord Briley*, 2007 WL 4532240, at *1–2.

Applying these factors, first, plaintiffs have not offered a justification for their failure to abide by the deadlines established in the Court's scheduling order. This appears to be due to the fact that, as of the time of their reply, plaintiffs were laboring under the misapprehension that both plaintiffs' and defendant's expert reports and disclosures were due on August 5, 2022. Failure to closely read the Court's order is not generally an adequate justification, although the Court cannot state that counsel's conduct was intentional.

Second, the proposed testimony of plaintiffs' experts Lewis and LaBrie is central to plaintiffs' case. Indeed, plaintiffs' case *requires* testimony as to causation. *See Ferguson v. State Farm Ins. Co.*, No. 06-3936, 2007 WL 1378507 (E.D. La. May 9, 2007) (Berrigan, J.) (discussing burdens of proof under Louisiana law in cases concerning insurance coverage); *Royal Manufactured Homes, LLC v. N.H. Ins. Co.*, No. 6:09-1063, 2011 WL 3468391, at *4 (W.D. La. Aug. 5, 2011).

Third, there is little evidence that admitting plaintiffs' experts' reports and testimony would prejudice the defendant. The defendant has received Lewis' expert

reports[36] and has already had an opportunity to depose both Lewis and LaBrie.[37] The defendant does not argue that it would be prejudiced if the Court were to admit plaintiffs' expert reports and testimony in spite of their lateness.

Fourth, and finally, trial in this matter is scheduled for November 14, 2022, just over a month and a half away. Neither party has requested a continuance and "[a] continuance at this eleventh hour is neither appropriate nor in the interests of justice." *Briley*, 2007 WL 4532240, at *2.

Weighing the *Geiserman* factors, the Court finds that exclusion of plaintiffs' expert reports and disclosures due to their late filing is not appropriate.

## B. Lewis' Expert Reports Do Not Address Causation and Do Not Meet the Requirements of Rule 26(A)(2)(B) or This Court's Scheduling Order

Lewis authored plaintiffs' only two expert reports: one pertaining to the damage caused by Hurricane Ida[38] and one pertaining to the damage caused by Tropical Storm Nicholas.[39] Both of her expert reports contain the same seven sentences, which the plaintiffs assert contain her expert opinion as to causation[40]:

> The water causing the and these issues of type [*sic*] damages is category 3 water according to ANSI/IICRC S500. This category of water requires remove [*sic*] and replacement of materials.

> After surveying the area for wind damages, evidence of tornadic activity was discovered within the area. The vibration and

---

[36] LaBrie did not author an expert report. R. Doc. No. 38-1, at 2.

[37] *See id.* at 5 n.2.

[38] R. Doc. No. 44-1.

[39] R. Doc. No. 44-2.

[40] R. Doc. No. 44, at 3 ("In these reports, Ms. Lewis stated her opinion regarding what caused the damages on each report, and the data she used to make them . . . . On page 7 of her Hurricane Ida estimate, Ms. Lewis states: [the seven sentences excerpted here.]").

> movement of the structure of home [*sic*] more likely than not
> caused plumbing pipe damages as well as electrical wiring
> damages.
>
> Due to the impact of the coronavirus pandemic, Hurricane Ida, and
> Hurricane Nicholas, costs have significantly increased for this area
> for limited labor, materials, and equipment. Prices also reflect
> [s]ubcontractor overhead and profit. General contractor overhead
> and profit will be addressed on the subtotal cost of the estimate by
> the standard ten and ten percentage.[41]

The remainder of both of Lewis' reports do not offer any opinions as to causation, and instead consist of itemized estimates of the cost of repairs to the property and photographs of the damage Lewis attributes to either storm. Defendant argues that these few sentences do not satisfy Rule 26(a)(2)(B) and this Court's scheduling order. Accordingly, Lewis' report must be excluded and she may not testify as an expert concerning causation.[42]

This Court agrees with the defendant. The few sentences transcribed above constitute the entirety of Lewis' expert opinion as reflected in her reports. The reports are too conclusory and fail to satisfy Rule 26.

For instance, the first sentence[43] of Lewis' reports discusses "causation," yet speaks in only general terms and without any foundation for the opinion.

---

[41] R. Doc. No. 44-1, at 7; R. Doc. No. 44-2, at 2.
[42] R. Doc. No. 38-1, at 4–5.
[43] "The water causing the and these issues of type [*sic*] damages is category 3 water according to ANSI/IICRC S500." R. Doc. No. 44-1, at 7; R. Doc. No. 44-2, at 2.

"ANSI/IICRC 500" is a reference to a general standard[44] which "describes the procedures to be followed and the precautions to be taken when performing water damage restoration in residential, commercial, and institutional buildings, and the systems and personal property contained within those structures."[45] These standards include different "categories" of water, based on the range of contamination in the water, with "category 3 water" being "grossly contaminated."[46]

Lewis' brief comment does not connect "category 3 water" and its generally associated damages with either Hurricane Ida or Tropical Storm Nicholas, and it does not address the essential questions of causation: whether the additional damages plaintiffs claim were caused by either or both of the storms. Nor does the statement provide the Court with information regarding how Lewis arrived at her conclusion that the damages claimed by the plaintiffs were caused by "category 3 water." A passing and decidedly unclear reference to causation—"causing the and these issues of type [*sic*] damages"—is not sufficient to meet Rule 26(a)(2)(B)'s requirement that expert disclosures contain "a complete statement of all opinions the witness will

---

[44] Lewis' reference to "ANSI/IICRC S500" appears to be a citation to the standard promulgated by Institute of Inspection Cleaning and Restoration Certification ("IICRC"), a member of the American National Standards Institute ("ANSI"). IICRC Standards, INST. INSPECTION CLEANING & RESTORATION CERTIFICATION, https://iicrc.org/iicrcstandards/ (last accessed Sept. 29, 2022).

[45] ANSI/IICRC S500 Standard for Professional Water Damage Restoration, INST. INSPECTION CLEANING & RESTORATION CERTIFICATION, https://iicrc.org/s500/ (last accessed Sept. 29, 2022).

[46] BSR/IICRC S500 Standard for Professional Water Damage Restoration 5–6 (drft. 5th ed. 2021), INST. INSPECTION CLEANING & RESTORATION CERTIFICATION, https://cdn.ymaws.com/www.iicrc.org/resource/resmgr/docs/standards/iicrc_s500_dra ft_standard_pu.pdf.

express and the basis and reason for them" and "the facts or data considered by the witness in forming them[.]" Fed. R. Civ. Proc. 26(a)(2)(B)(i), (ii).

Even if this oblique reference to causation is read to assert that Hurricane Ida and Tropical Storm Nicholas resulted in water intrusion into plaintiffs' home, which then caused the damages for which plaintiffs seek payment—a generous reading— such an assertion would be too conclusory. For Lewis to declare that "category 3 water" caused damage to plaintiffs' home (if indeed that is what this sentence means) without providing any information with regards to how she arrived at that conclusion, including the data and methodologies she relied upon, amounts to a conclusion without any support.

Lewis' subsequent assertions that "[a]fter surveying the area for wind damages, evidence of tornadic activity was discovered within the area" and that "[t]he vibration and movement of the structure of home more likely than not caused plumbing pipe damages as well as electrical wiring damages"[47] are likewise too conclusory to constitute an admissible expert opinion as to whether the claimed damages were caused by Hurricane Ida and/or Tropical Storm Nicholas, or to attribute the damages to one storm and/or the other. Lewis inspected the property on February 10, 2022,[48] nearly five months after Tropical Storm Nicholas and five and a half months after Hurricane Ida. It is unclear how—after so many intervening months and without viewing the property between the two storms—she arrived at

[47] R. Doc. 44-1, at 7; R. Doc. No. 44-2, at 2.
[48] R. Doc. 44-1, at 7; R. Doc. No. 44-2, at 2.

her conclusion and also attributed the damages to a particular storm.[49] Her reports offer no discussion of the "basis or reasons" or the "facts or data considered" when forming her opinion that (1) tornadic activity occurred, (2) the tornadic activity "more likely than not" caused damage to the electrical wiring and plumbing in plaintiffs' home, (3) the tornadic activity was caused by either Hurricane Ida and/or Tropical Storm Nicholas.

Without such content, Lewis' reports fail to comply with Rule 26 and this Court's scheduling order. Moreover, because Lewis' reports do not offer an admissible opinion as to causation, including how she arrived at her opinion, she may not testify as to causation. Accordingly, both Lewis' expert reports and testimony are properly excluded.[50]

### C. LaBrie May Testify as a Lay Witness

The defendant argues that as plaintiffs submitted no expert report by LaBrie, as required by Rule 26, and this Court's scheduling order, he may not testify as an expert. Plaintiffs do not appear to contest the defendant's argument that LaBrie cannot testify as an expert, instead urging that he be allowed to provide lay witness testimony.

---

[49] Lewis includes costs for electrical and plumbing repairs in both her Hurricane Ida and Tropical Strom Nicholas reports. *See* R. Doc. No. 38-3, at 2, lines 4, 332–33; R. Doc. No. 38-4, at 2, lines 1–3. She does not state how she attributed particular plumbing and electrical damages to a specific storm.

[50] Because the Court finds that Lewis' expert reports and testimony should be excluded for failure to satisfy the requirements of Rule 26 and the Court's scheduling order, the Court will not address defendant's additional argument that Lewis' reports and testimony should be excluded because they are not relevant or helpful to the jury.

The admissibility of opinions by lay witnesses is governed by Federal Rule of Evidence 701, which provides that non-expert witnesses may offer opinions that are "rationally based on the witness's perception[,]" are "helpful to clearly understanding the witness's testimony or to determining a fact in issue[,]" and are "not based on scientific, technical, or other specialized knowledge . . . ."

As noted by the Fifth Circuit, "the distinction between lay and expert testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" *Pendarvis v. Am. Bankers Ins. Co. of Fla.*, 354 F. App'x 866, 868 (5th Cir. 2009) (quotations and citations omitted). Thus, "[t]he general rule is that lay witnesses may 'draw straightforward conclusions from observations informed by [their] own experience' . . . . In other words, a lay witness may testify 'as a witness relaying his own observations,' but not as a knowledgeable expert who can 'provide the jury with an overview' of a particular field of knowledge and 'authoritatively' speak on an issue." *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 2019 WL 9899920, at *20 (E.D. Tex. June 28, 2019) (quoting *United States v. Riddle*, 103 F.3d 423, 429 (5th Cir. 1997)). "A lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury." *United States v. Ebron*, 683 F.3d 105, 136–37 (5th Cir. 2012).

While the Fifth Circuit has "allowed lay witnesses to express opinions that required specialized knowledge[,]" if the witness does not "wield[] his expertise . . . in

a way that is incompatible with a lay witness[,]" *Riddle*, 103 F.3d 428–29, this holding applies only when the lay witness gained their specialized knowledge about a topic through extensive observation in a specific context over an extended period of time. For example, lay testimony of FBI agents regarding the "meaning and use of certain code words in the drug trade" was not improper despite requiring specialized knowledge on the part of the agents because the witnesses based their opinions on their "extensive participation" and "first-hand observations in a specific investigation." *United States v. El-Mezain*, 664 F.3d 467, 514 (5th Cir. 2011), *as revised* (Dec. 27, 2011) (discussing *United States v. Miranda*, 248 F.3d 434, 441 (5th Cir. 2001) (emphasis added)); *see also United States v. McMillan*, 600 F.3d 434, 456 n.72 (5th Cir. 2010) ("A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his 'investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise . . . .'") (quoting *United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007)).[51]

In the instant case, plaintiffs do not claim that LaBrie gained any specialized knowledge specifically related to their insurance claims through extensive

---

[51] By contrast, the witness in *Riddle* exceeded the scope of proper lay witness testimony when he did not limit his opinion testimony to "straightforward conclusions from observations informed by his own experience" as a bank examiner and instead offered his opinion on "prudent" banking practices, "dr[e]w on his specialized knowledge as a bank examiner[,]" and asserted a causal relationship between the defendant's actions and the bank's failure. 103 F.3d at 428–29. Because his testimony was not based upon specialized knowledge gained from extensive participation in the specific circumstances and facts underlying the case, but instead from his general specialized knowledge gained as a bank examiner, his lay testimony was improper.

observation of their property over an extended period of time. Instead, plaintiffs argue that because LaBrie was present for and assisted in Lewis' inspection,[52] it is appropriate for LaBrie to testify as a fact witness concerning "the damages he observed" and "the impressions he formed" while assisting Lewis.[53] Plaintiffs argue that such testimony will be "helpful to the jury in determining damages to the [property's] structure, appliances, cooling systems, and other related factual determinations."[54]

Finally, the Fifth Circuit has addressed the concern voiced by the defendant that allowing LaBrie to testify as a lay witness would allow the plaintiffs to circumvent the requirements of the Federal Rules of Civil Procedure and the Federal Rules of Evidence. The "foundational requirement" that "lay opinion testimony may be elicited only if it is based on the witness's first-hand knowledge or observations[,]" the Fifth Circuit noted, "helps to eliminate the risk that a party will circumvent the reliability requirements set forth in Federal Rule of Evidence 702 by adducing expert testimony in lay witnesses' clothing." *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685–86 (5th Cir. 2003). Accordingly, the Court will not disallow LaBrie's lay testimony at this time, but will evaluate the same at trial.

## IV. CONCLUSION

For the reasons stated herein,

---

[52] The plaintiffs note that LaBrie "was the person who took moisture readings in the [plaintiffs'] home." R. Doc. No. 44, at 5.
[53] *Id.* at 6.
[54] *Id.*

**IT IS ORDERED** that defendant's motion *in limine* to exclude the reports and testimony of plaintiffs' expert Lewis and the testimony of plaintiffs' expert LaBrie is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that defendant's motion *in limine* is **GRANTED** to the extent that Lewis' reports and testimony are excluded;

**IT IS FURTHER ORDERED** that defendant's motion *in limine* is **DENIED** to the extent that LaBrie is not prohibited from testifying as a lay witness.

New Orleans, Louisiana, October 7, 2022.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**